## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KAIA CAMPBELL, on her own behalf
and on behalf of those similarly
situated,**

      **Plaintiff,**

**v.**                              **Case No: 8:23-cv-2290-MSS-NHA**

**ADW CONSULTING, LLC d/b/a
GEORGIE'S GARDEN CAFÉ and
GEORGE WOOD,**

      **Defendants.**

_____

## <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of Plaintiffs' Motion for Final Default Judgment. (Dkt. 30) Despite having been served, Defendants ADW Consulting, LLC and George Wood have failed to appear, answer, or otherwise respond to the Complaint, which Plaintiff filed on October 9, 2023. (Dkt. 1) The Clerk entered default against each Defendant on May 24, 2024. (Dkts. 26, 27) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Motion is **GRANTED IN PART and DENIED IN PART**.

### I.    BACKGROUND

On October 9, 2023, Plaintiff Kaia Campbell ("Campbell"), on her own behalf and on behalf of those similarly situated, initiated this action against Defendants ADW Consulting, LLC ("ADW") and George Wood ("Wood") (collectively,

"Defendants") for the recovery of unpaid minimum wages, liquidated damages, and declaratory and other relief under the Fair Labor Standards Act (the "FLSA"). (Dkt. 1) Campbell filed her Complaint pursuant to 29 U.S.C. § 216(b), which authorizes one or more employees to maintain a collective action to recover from an employer who violates the FLSA. Id. ("An action . . . may be maintained against any employer . . . by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated.")

In the Complaint, Campbell alleges ADW operates a restaurant and bar in Sarasota, Florida. (Id. at ¶ 8) Campbell alleges ADW is incorporated in Florida and conducts business in Florida. (Id. at ¶¶ 8, 10) Campbell also alleges Wood, a Florida resident, owned and operated ADW. (Id. at ¶ 9)

Campbell alleges that at all times material to this action, Defendant ADW was an enterprise covered by the FLSA, and that Defendants ADW and Wood were "employers" as defined by 29 U.S.C. § 203(d). (Id. at ¶¶ 12–13) Specifically, Campbell alleges ADW had annual gross volume of sales made or business done of not less than $500,000, exclusive of excise taxes at the retail level. (Id. at ¶ 14) Campbell also alleges that ADW was engaged in commerce within the meaning of § 203(s)(1) because ADW employed at least two employees who were engaged in commerce or were handling, selling, or working on goods or materials that had been moved in or produced for commerce, like napkins, dishes, and silverware. (Id. at ¶ 15) As for Wood, Campbell alleges he hired and fired ADW employees, determined ADW employees' work and pay schedules, and controlled ADW's finances and operations. (Id. at ¶ 9)

Campbell alleges Defendants employed her as an hourly paid server. (Id. at ¶ 7) Campbell also alleges that she and other ADW employees similarly situated to her were engaged in interstate commerce by virtue of their employment because they routinely handled credit card transactions that resulted in communications that crossed state lines. (Id. at ¶ 17) Additionally, Campbell alleges that she and other ADW employees routinely and regularly handled goods, materials, and supplies that had travelled in interstate commerce. (Id.)

Campbell alleges that she performed server and bartender duties for Defendants from March 2023 until May 2023. (Id. at ¶ 21) In exchange for performing these duties, Campbell understood that Defendants would pay her and those similarly situated to her an hourly rate plus tips. (Id. at ¶ 22) However, Campbell alleges, Defendants failed to pay employees the statutory minimum wage for all hours worked per week. (Id. at ¶ 23) For example, Defendants failed to pay Campbell and those similarly situated for hours spent training for the server/bartender position. (Id. at ¶ 24) Campbell also alleges Defendants reported inflated amounts of tips purportedly earned by her and those similarly situated to her to avoid paying those employees the statutory minimum wage rate. (Id. at ¶ 26) As a result of Defendants' alleged conduct, Campbell and those similarly situated to her did not receive minimum wages for all hours worked during some or all workweeks throughout her/their employment with Defendants. (Id. at ¶ 27) Campbell alleges Defendants' conduct was knowing and willful. (Id. at ¶ 29)

Campbell further alleges Defendants failed to provide her and those similarly situated to her notice of: the amount of the cash wage to be paid to them as tipped

employees; the additional amount being claimed by Defendants as a tip credit; that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by the tipped employees; that all tips received by the tipped employees are to be retained by the employees except for tips contributed pursuant to a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions. (Id. at ¶ 32) Campbell alleges Defendants failed to maintain proper time records and to post informational posters advising its employees of their rights under the FLSA, as required by law. (Id. at ¶¶ 33–34)

Campbell requests that this action be designated as a collective action under 29 U.S.C. § 216(b). (Id. at ¶ 56) The Complaint defines those similarly situated to Campbell as, "All Servers/bartenders who worked for [or] at [ADW] within the last three (3) years and who were not compensated at the full applicable minimum wage rate for all hours worked in one or more workweeks." (Id. a ¶ 43)

On November 27, 2023, Campbell filed a notice of consent to join the action by herself, Serafima Kosacheva, Tammy Tapia, and Stephanie Katsiamakis. (Dkt. 2) Subsequently, Campbell advised the Court that Ms. Kosacheva and Ms. Tapia withdrew their consent to join in this action as "opt-in" plaintiffs. (Dkt. 23) Thus, in the Motion for Default Judgment, Campbell states that she and "Opt-In Plaintiff Stephanie Katsiamakis are the only remaining Plaintiffs in this matter." (Dkt. 30 at 1 n.1) Campbell never filed a motion for conditional certification of this case as a class

4

or collective action, so the Court never considered whether conditional certification was appropriate.

On December 1, 2023, Campbell filed returns of service that show ADW and Wood were served with process. (Dkts. 11, 12) To date, neither Defendant has filed an answer or other responsive pleading in this case. Upon Campbell's Motions for Clerk's Default, (Dkts. 13, 24), the Clerk entered default. (Dkts. 26, 27) Under Federal Rule of Civil Procedure 55, Campbell, on behalf of herself and Ms. Katsiamakis, now seeks entry of a final judgment of default against each Defendant as well as an award of actual and liquidated damages and attorneys' fees and costs. (Dkt. 30)

## II.    LEGAL STANDARD & ANALYSIS

Under Federal Rule of Civil Procedure 55, a court may enter a default judgment if it has jurisdiction over the claims and parties and there is a sufficient basis in the pleadings to support the relief sought. Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975);[1] Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). In defaulting, a defendant admits the plaintiff's well-pleaded allegations of fact. Id. at 1245. But "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short . . .  a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., 515 F.2d at 1206.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. See Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543–44 (11th Cir. 1985). Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or the submission of detailed affidavits establishing the necessary facts. See id. at 1544.

### a. Jurisdiction

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, which confers jurisdiction for civil actions arising under federal law. Campbell sues Defendants under the FLSA, a federal statute. Campbell alleges Defendant ADW is a Florida corporation and Defendant Wood is a Florida resident. Thus, the Court finds it has jurisdiction over the claims and the parties.

### b. Collective Action

Although Campbell never filed a motion for conditional certification of this case as a collective action, Opt-In Plaintiff Katsiamakis became a party to this case upon the filing of her consent to join. (Dkt. 2-2) "[C]onditional certification is unnecessary to obtain party-plaintiff status." Mickles v. Country Club Inc., 887 F.3d 1270, 1277 (11th Cir. 2018). "'The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court.'" Id. (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013)). Under § 216(b), those employees "who opt in become party plaintiffs upon the filing of a consent and []

6

nothing further, including conditional certification, is required." Id. at 1278 (citations omitted). "Although § 216(b) also requires an opt-in plaintiff be similarly situated to the named plaintiff, the opt-in plaintiffs remain party plaintiffs until the district court determines they are not similarly situated and dismisses them." Id. Thus, Opt-In Plaintiff Katsiamakis is a party-plaintiff to this action. The Court may grant Katsiamakis relief if she is similarly situated to Campbell and is shown to be entitled to any such relief.

The Court is satisfied that Katsiamakis and Campbell are similarly situated. "Job duties, pay provisions, and whether the employees were subjected to a common policy that is the basis for the alleged FLSA violation are factors to be considered in determining whether Plaintiff is similarly situated to the proposed class." Belloso v. Asplundh Tree Expert, Co., No. 17CV2020, 2018 WL 4760822, at *3 (M.D. Fla. July 18, 2018), report and recommendation adopted as modified, No. 17CV2020, 2018 WL 4760671 (M.D. Fla. Aug. 24, 2018). "The key consideration is that to be similarly situated, there must be substantial allegations that potential members were together the victims of a single decision, policy, or plan." Hart v. JPMorgan Chase Bank, N.A., No. 12-CV-00470, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) (internal quotation marks and citation omitted). A plaintiff need only show that his or her position is "similar, not identical" to the positions of the other plaintiffs. Id. (citing Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996)). However, "the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions." Anderson v. Cagle's, Inc., 488

F.3d 945, 953 (11th Cir. 2007) (internal citations and quotation marks omitted); see Hart, 2012 WL 6196035, at *5 (finding certification of a collective action inappropriate where the case involved "divergent theories of liability," and "the putative class members were subject to, *inter alia,* different supervisors, timekeeping practices, and job obligations and responsibilities").

Here, both Campbell and Katsiamakis assert they were employed by Defendant ADW as servers. (Dkt. 10-1, 10-4) Katsiamakis and Campbell aver they worked at the same restaurant location at the same time. Both Plaintiffs maintain Defendants failed to compensate them in accordance with the FLSA. In their answers to the Court's interrogatories, Katsiamakis and Campbell each identified the nature of her claim as her employer's failure to record, or her employer's prohibition of her recording, all of her working time, and as her employer's failure to correctly calculate her compensation. (Dkt. 10-1, 10-4) Additionally, Campbell and Katsiamakis shared several supervisors. Katsiamakis identifies Defendant Wood, Bret Nevin, Fabian Bustos, Alex Nanos, and Ingrid Weaver as her supervisors. (Dkt. 10-4) Campbell identifies Defendant Wood, Steven Hill, Fabian (last name unknown), Alex (last name unknown), and Ingrid Weaver as her supervisors. (Dkt. 10-1) Based on the foregoing, the Court finds Campbell and Katsiamakis to be similarly situated. The Court may, therefore, determine Defendants' liability on a collective basis.

### c. Liability

The Complaint states a claim for unpaid minimum wages under 29 U.S.C. § 216(b). The FLSA requires employers to pay a minimum wage to their employees. Id.

at § 206(a). "Any employer who violates [§ 206(a)] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." Id. at § 216(b).

To trigger liability under the FLSA, "a plaintiff must show: (1) an employee-employer relationship exists between the parties, and (2) he is 'covered' by the FLSA." Cabreja v. SC Maintenance, Inc., No. 19-cv-296, 2019 WL 2931469, at *3 (M.D. Fla. June 19, 2019) (citing Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011)). As to the first element, "[a]n employee is 'any individual employed by an employer,' while an 'employer' includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee . . . .'" Id. (quoting 29 U.S.C. § 203(e)(1) and (d)) (noting an individual is derivatively liable for an employer's FLSA violation if he "(1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment"). As to the coverage element, there are two types of FLSA coverage. Josendis, 662 F.3d at 1298. "First, an employee may claim 'individual coverage' if he regularly and 'directly participat[es] in the actual movement of persons or things in interstate commerce.'" Id. (quoting Thorne v. Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006)). Second, a plaintiff may claim "enterprise coverage" if the plaintiff's employer

> "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and . . . has an "annual gross volume of sales made or business done . . . not less than $500,000."

9

<u>Gaviria v. Maldonado Brothers, Inc.</u>, No. 13-60321, 2014 WL 12531281, at *3 (S.D. Fla. Mar. 31, 2014) (quoting 29 U.S.C. § 203(s)(1)(A)).

By their default, Defendants admit well-pleaded factual allegations that establish Defendants' FLSA liability. First, the Complaint establishes Campbell and Defendant had an employer-employee relationship. Campbell alleges Defendant ADW employed her as an hourly paid server. (<u>Id.</u> at ¶ 7) As for Wood, Campbell alleges he is an employer under the FLSA because he hired and fired ADW employees, determined ADW employees' work and pay schedules, and controlled ADW's finances and operations. (<u>Id.</u> at ¶ 9) These allegations are sufficient to establish that an employer-employee relationship existed between each Defendant and Campbell.

Next, Campbell alleges sufficient facts to establish FLSA coverage. As for ADW's enterprise coverage, Campbell alleges ADW had annual gross volume of sales made or business done of not less than $500,000, exclusive of excise taxes at the retail level. (<u>Id.</u> at ¶ 14) Campbell also plausibly alleges ADW employed at least two employees who were engaged in commerce or were handling, selling, or working on goods or materials that had been moved in or produced for commerce, like napkins, dishes, and silverware. (<u>Id.</u> at ¶ 15) To establish individual coverage, Campbell alleges that she engaged in interstate commerce by virtue of her employment because she routinely handled credit card transactions that resulted in communications that crossed state lines. (<u>Id.</u> at ¶ 17) Additionally, Campbell alleges that she routinely and regularly handled goods, materials, and supplies that had travelled in interstate commerce, like napkins, dishes, and silverware. (<u>Id.</u> at ¶¶ 15, 17) These allegations are

sufficient to establish the FLSA covered Defendants and Campbell, and required Defendants pay Campbell minimum wages.

By their default, Defendants admit they willfully failed to pay Plaintiffs a minimum wage as required by the FLSA. (Id. at ¶¶ 24–31) See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009). Thus, the Court finds Plaintiffs Campbell and Katsiamakis are entitled to default judgment against Defendants on their claims for unpaid minimum wages.

### d. Damages

Plaintiffs seek awards of actual and liquidated damages based on their FLSA claims. Under Rule 55 of the Federal Rules of Civil Procedure, the Court may award Plaintiffs damages without a hearing if their claims are "for a sum certain that can be made certain by computation." "A plaintiff may establish the necessary amount of damages by affidavit." Swisher v. The Finishing Line, Inc., 2008 WL 4330318, No. 07-cv-1542, at *2 (M.D. Fla. Sept. 22, 2008) (citing Fed. R. Civ. P. 55(b)). In an action for unpaid minimum wages under the FLSA, a plaintiff is entitled to recover the federal minimum wage applicable at the time. Kimball v. Pradius Realty, Inc., No. 05-cv-1584, 2006 WL 8448580, at *2 (M.D. Fla. Mar. 28, 2006). In support of their claims for damages, Plaintiffs Campbell and Katsiamakis each submit a declaration detailing the number of hours she worked without minimum wage compensation. (Dkts. 30-1, 30-2)

Campbell asserts she worked an average of 36 hours per week from March 11, 2023 to May 4, 2023, but that Defendants never paid her for any of these hours worked.

(Dkt. 30-1) Campbell assumes she is entitled to a minimum wage of $11 per hour and that her term of employment was eight weeks. (Id.) Based on her assumptions, she contends she is entitled to $3,168.00 as actual damages. (Id.) However, the federal minimum wage in effect throughout Campbell's employment with Defendant ADW was $7.25 per hour.[2] Also, the Court notes that Campbell's employment with ADW lasted seven weeks and five days. The Court accepts her declaration that she worked an average of 36 hours per week. Accordingly, the Court finds Campbell is entitled to $1,827.00 for the seven full weeks she worked for Defendant ADW. For the remaining five days, Campbell is entitled to $186.43.[3] Based on the foregoing, the Court finds Campbell has shown she is entitled to an award of $2,013.43 as actual damages. Additionally, under 29 U.S.C. § 216(b), Campbell is entitled to liquidated damages in an amount equal to her actual damages. Thus, Campbell is entitled to recover a total judgment of $4,026.86.

As for Katsiamakis, she avers she worked an average of 32 hours per week throughout her employment with Defendant ADW, which began on February 22, 2023 and ended on July 7, 2023. (Dkt. 30-2) First, Katsiamakis seeks unpaid minimum wages for her first three weeks of employment. She states that despite beginning work for Defendant ADW on February 22, 2023, she did not receive her first paycheck until

---

[2] *Changes in Basic Minimum Wages in Non-Farm Employment Under State Law: Selected Years 1968 to 2024*, U.S. DEP'T OF LABOR, https://www.dol.gov/agencies/whd/state/minimum-wage/history (last visited Jan. 7, 2025) (showing the minimum wage for federal jurisdictions from 2022 to 2024 was $7.25 per hour).
[3] If Campbell worked an average of 36 hours in seven days, she would have worked an average of 25.71 hours in five days. At $7.25 per hour, Campbell would have earned $186.43 in federal minimum wages over five days of employment.

March 16, 2023. (Id. at ¶ 3) Katsiamakis asserts that this first paycheck did not compensate her for any of the hours she worked between February 22 and March 16, 2023. (Id.) ("During the time period that I was not paid, I worked an average of 32 hours per week. Therefore, I am due a total of $1,056.00 ($11/hr minimum wage rate * 32 hrs/week * 3 weeks) in minimum wages during this period.") Katsiamakis does not state the amount of the paycheck she received on March 16, 2023. Likewise, Katsiamakis does not explain why she is entitled to compensation for a full three weeks' worth of work when she received a paycheck—albeit of an unknown amount—at the end of the third week. She does not say what this paycheck compensated her for, if it did not compensate for any of the hours she worked during those three weeks. Accordingly, Katsiamakis fails to provide plausible evidence of the hours worked for which she did not receive minimum wages between February 22 and March 16, 2023. The Court declines to award Katsiamakis actual damages for her claimed unpaid minimum wages during this period.

Second, Katsiamakis avers she never received a paycheck for her final week of work, from July 1, 2023 to July 7, 2023. (Id. at ¶ 5) Katsiamakis asserts she is entitled to a minimum wage of $11 per hour. (Id.) Based on this assumption, she contends she is entitled to $352.00 as actual damages for this week of unpaid work. (Id.) However, the federal minimum wage in effect throughout Katsiamakis's employment with Defendant ADW was $7.25 per hour.[4] The Court accepts Katsiamakis's declaration

---

[4] See U.S. DEP'T OF LABOR, *supra* note 2.

that she worked an average of 32 hours per week. Accordingly, the Court finds Katsiamakis is entitled to an award of $232.00 in actual damages to compensate for the last week she worked for Defendant ADW. Additionally, under 29 U.S.C. § 216(b), Katsiamakis is entitled to liquidated damages in an amount equal to her actual damages. Thus, Katsiamakis is entitled to recover $464.00 in actual and liquidated damages for ADW's failure to pay her minimum wages for the hours she worked from July 1 to July 7, 2023.

Finally, Katsiamakis, unlike Campbell, seeks an award of actual damages in the amount of cash tips Defendant ADW failed to pay her from three days of work—June 24, 2023, July 5, 2023, and July 7, 2023. (Dkt. 30-2 at ¶ 6) Katsiamakis seeks an award of actual damages in the total amount of $800.00 for the tips Defendant ADW did not give her on these dates. (Id.) Importantly, the FLSA creates a private right of action for the recovery of unpaid minimum wages; it does not create a private right of action for the collection of improperly withheld tips. Malivuk v. Ameripark, LLC, 694 F. App'x 705, 709 (11th Cir. 2017).[5] Katsiamakis, therefore, is entitled to recover unpaid tips only if those tips were necessary to ensure Katsiamakis received federal minimum wages on these dates. By this Order, the Court awards Katsiamakis federal minimum wages for July 5, 2023 and July 7, 2023. Katsiamakis may not recover any unpaid tips from these dates.

---

[5] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

The Court also declines to award Katsiamakis actual damages for ADW's failure to give her cash tips earned on June 24, 2023. Katsiamakis does not assert that Defendant ADW failed to pay her normal hourly rate of compensation—the tip-credited minimum wage rate under Florida law in 2023, $7.98 per hour—on that day.[6] (Dkt. 10-4) Since Katsiamakis does not allege that she did not receive a regular paycheck for her work on June 24, 2023, the Court assumes she received her regular rate of pay on June 24, 2023 and was thus paid more than the federal minimum wage in place at the time. Thus, the FLSA does not entitle her to recover the withheld tips.[7]

On this record, the Court finds Katsiamakis entitled to a damages award of $464.00 for her last week of work only.

### e.  Attorney's Fees & Costs

The FLSA mandates an award of reasonable attorney's fees and costs to a prevailing plaintiff. <u>Weisel v. Singapore Joint Venture, Inc.</u>, 602 F.2d 1185, 1191 n.18 (5th Cir. 1979).[8] A prevailing plaintiff is "one who has been awarded some relief by the court" and "has prevailed on the merits of at least some of his claims." <u>Buckhannon Bd. & Care Home, Inc. v. Va. Dep't of Health and Hum. Res.</u>, 532 U.S. 598, 603 (2001) (citations omitted). Here, Plaintiffs Campbell and Katsiamakis are prevailing plaintiffs under the FLSA because the Court finds they are entitled to default judgment against Defendants and awards of actual and liquidated damages.

---

[6] U.S. DEP'T OF LABOR, *supra* note 2.

[7] Katsiamakis may be able to collect any unpaid tips via a state law claim.

[8] <u>See</u> <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1207 (11th Cir.1981) (adopting as binding precedent all decisions of the former Fifth Circuit issued on or before September 30, 1981).

Accordingly, the FLSA mandates the Court award reasonable attorney's fees and costs to Plaintiffs.

"[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This calculation produces the "lodestar," which is then adjusted to reflect "results obtained." Id. The party seeking fees bears the burden of establishing the appropriate hours and hourly rates. Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted).

In determining the number of hours reasonably expended on litigation, "'excessive, redundant, or otherwise unnecessary'" hours must be excluded. Norman, 836 F.2d at 1301 (quoting Hensley, 461 U.S. at 343). Such hours are those "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel.*" Id. (emphasis in original) (internal quotations and citations omitted).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. "The fee applicant bears the burden of establishing the requested rates are in line with the prevailing market rates by producing direct evidence of rates charges in similar circumstances or opinion evidence of reasonable rates." Dozier v. DBI Servs., LLC, No. 18-cv-972, 2023 WL

16

11959809, at *3 (M.D. Fla. Feb. 14, 2023) (citing <u>Norman</u>, 836 F.2d at 1299). "At a minimum, satisfactory evidence consists of more than the affidavit of the attorney performing the work[;] instead 'satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.'" <u>Id.</u> (<u>Norman</u>, 836 F.2d at 1299).

Once the lodestar is calculated, there is a "strong presumption" that it represents "the reasonable sum the attorneys deserve." <u>Bivins v. Wrap It Up, Inc.</u>, 548 F.3d 1348, 1350 (11th Cir. 2008) (citations omitted). However, the district court must consider whether the lodestar should be adjusted for "results obtained." <u>Norman</u>, 836 F.2d at 1302 (citing <u>Hensley</u>, 461 U.S. at 436–37). "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion." <u>Id.</u>

In this case, Plaintiffs seek a fee award of $7,419.00 based on 19.9 hours of work performed by attorney Kimberly De Arcangelis and paralegal Becki Whaley. (Dkt. 30-3 at ¶ 13) In support of their fee application, Plaintiffs supply a declaration by Ms. De Arcangelis, in which she avers she billed 11.6 hours and Ms. Whaley billed 8.6 hours. (<u>Id.</u>) Attached to Ms. De Arcangelis's declaration are timesheets that reflect records of Ms. De Arcangelis's and Ms. Whaley's time. (<u>Id.</u> at 9–11) For each hour of work Ms. De Arcangelis performed in this case, Plaintiffs seek $475. (Dkt. 30 at 14) For Becki Whaley, Plaintiffs seeks $230 for each hour of work performed. (Dkt. 30-3 at ¶ 11)

Ms. De Arcangelis's work on Plaintiffs' case included communicating with Plaintiffs in preparation of the Complaint; communicating with Defendant Wood to

17

obtain employment records to verify Plaintiffs' claims and to facilitate potential settlement; preparing a settlement demand letter; and reviewing Ms. Whaley's drafts of the papers that resulted in the entry of default against Defendants. (Id. at 9–11) The time Ms. De Arcangelis recorded was reasonably spent providing a service to Plaintiffs. Accordingly, the Court finds the number of hours Ms. De Arcangelis reasonably expended on this case is 11.6 hours.

As for Ms. Whaley, a court may award fees for paralegal work that is not purely secretarial and that requires the substantive knowledge of a paralegal. See Scelta v. Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) (quoting Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988)). Any tasks a paralegal undertakes that are "clerical or secretarial in nature [are] not separately recoverable." Hansen v. Deercreek Plaza, LLC, 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) (internal quotation marks and citations omitted). Here, Ms. Whaley performed some work that was clerical in nature and some work that was not purely secretarial and required the substantive knowledge of a paralegal. For example, when Ms. Whaley prepared the proposed summons, civil cover sheet, notices of consent to join, and notice of related cases for filing with the Court, she performed clerical tasks. See Huntley v. Comm'r of Soc. Sec., No. 12–cv–613, 2013 WL 5970717, at *4 (M.D. Fla. Nov. 8, 2013) (citations omitted) (noting that courts consider the preparation of summonses and civil cover sheets, as well as the mailing and filing of documents, to be clerical work). Likewise, when Ms. Whaley communicated with process servers, calendared deadlines, and obtained signatures from Plaintiffs, Ms. Whaley performed

clerical work. See Ford v. Navika Cap. Grp., LLC, 14-00311, 2017 WL 1381668, at *4 (S.D. Ala. Apr. 17, 2017) (citations omitted). However, where Ms. Whaley spent time preparing motions or declarations, Ms. Whaley performed work that required the substantive knowledge of a paralegal. Ms. Whaley's time spent on these tasks is compensable. Based on the foregoing, the Court finds Ms. Whaley spent 5.2 hours of compensable time working on Plaintiffs' case. The Court finds this time was reasonably expended and not spent on duplicative or redundant tasks.

Next, the Court must determine a reasonable hourly rate for Ms. De Arcangelis's and Ms. Whaley's services. Starting with Ms. De Arcangelis, the Court finds that the requested $475 hourly rate is reasonable, considering market rates for lawyers with her experience and expertise. In support of this rate, Ms. De Arcangelis's declaration details her experience litigating FLSA cases as lead or class counsel for at least twelve years. (Dkt. 30-3 at ¶ 7) She has been a member of good standing of the Florida Bar since 2006. (Id. at ¶ 10) Ms. De Arcangelis cites a case in which the court found an hourly rate of $425 for her services was reasonable in 2019. Pena v. RDI, LLC, No. 8:17-cv-01404, 2019 WL 3017574, at *2 (M.D. Fla. July 10, 2019). Ms. De Arcangelis provides no evidence or opinion testimony, other than her own, that an hourly rate of $475 is "the prevailing market rate" in Tampa or in the Middle District of Florida "for similar services by lawyers of reasonably comparable skills, experience,

and reputation."[9] <u>Norman</u>, 836 F.2d at 1299. Nonetheless, the Court finds the evidence that Ms. De Arcangelis was awarded an hourly rate of $425 in this District in 2019 is satisfactory to support the reasonableness of the requested rate in this case. Adjusting for inflation, and with the benefit of the Court's knowledge of rates in this legal community, the finds an hourly rate of $475 for Ms. De Arcangelis's work in this case is reasonable. Accordingly, the Court will award Plaintiffs $475 per hour of Ms. De Arcangelis's work for this case.

As for Ms. Whaley, Plaintiffs provide no evidence to support the requested rate of $230 an hour. Plaintiffs provide no examples of cases in which Ms. Whaley or other paralegals were awarded a $230 hourly rate to show that it is the "the prevailing market rate" in Tampa or in the Middle District of Florida for paralegals with similar skills and experience. A review of recent case law shows that courts in this District routinely award paralegals hourly rates between $100 and $175, depending on factors like the paralegals' experience and the complexity of the litigation. See <u>Plum Creek Tech., LLC v. Next Cloud, LLC</u>, No. 19-cv-1974, 2020 WL 3317897, at *4 (M.D. Fla. June 3, 2020) (collecting cases); <u>Jacob v. Bais Yisroel Cmty. Ctr. of Tampa Bay, LLC</u>, No. 23-cv-2703, 2024 WL 4103601, at *4 (M.D. Fla. Aug. 23, 2024); <u>Viral DRM, LLC v. Hardee Broad., LLC</u>, No. 23-cv-2628, 2024 WL 5248060, at *5 (M.D. Fla. Dec. 12, 2024). While the Court credits Ms. De Arcangelis's testimony that Ms. Whaley has

---

[9] The Court does not consider the evidence that Ms. De Arcangelis was awarded an hourly rate of $675 in the Northern District of Illinois in 2022 because the relevant market for legal services is the market in Tampa and/or the Middle District of Florida.

extensive experience as a litigation paralegal in FLSA cases, without more, the Court cannot award Ms. Whaley the requested hourly rate. Considering Ms. Whaley's experience and the relative simplicity of this case compared to the complexity of cases in which paralegals were awarded higher hourly rates, the Court concludes an hourly rate of $150 is reasonable for the work Ms. Whaley performed on Plaintiffs' case.

Based on the foregoing, the lodestar in this case is $6,290.00, calculated as follows:

| Attorney/Paralegal | Reasonable Hours | Reasonable Hourly Rate | Total |
|---|---|---|---|
| Ms. De Arcangelis | 11.6 | $475 | $5,510.00 |
| Ms. Whaley | 5.2 | $150 | $780.00 |
| | | | **$6,290.00** |

The Court declines to reduce the rate under any lodestar analysis. Counsel pursued the matter to resolution and obtained favorable results for the clients, risking a substantial possibility that an adverse result could have occurred. Defendants completely defaulted and are not present to contest the value of the results obtained. Accordingly, the amount of attorney's fees awarded to Plaintiffs is $6,290.00.

Plaintiffs are also entitled to an award of costs. Under the FLSA, the following may be taxed as costs:

> (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees related to printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket

fees; and (6) compensation of court-appointed experts and fees related to interpretation services.

Id. at *5 (citing 28 U.S.C. § 1920); see also E.E.O.C. v. W&O, Inc., 213 F.3d 600, 624 (11th Cir. 2000) (holding that private process server fees are taxable costs under § 1920). Plaintiffs attach a record of costs associated with Plaintiffs' prosecution of this action. Except for one cost of $1.50 captioned "Long Distance Telephone," all other enumerated costs are for filing fees, postage, service of process, and printing. These costs are compensable under § 1920. Accordingly, Plaintiffs are entitled to an award of costs equal to $793.71.

### f.  Post-Judgment Interest

Plaintiffs are also entitled to recover post-judgment interest under 28 U.S.C. § 1961(a)(b). Post-judgment interest shall be calculated from the date of judgment "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Id. Such interest "shall be computed daily to the date of payment . . . , and shall be compounded annually." Id.

## III.  CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Default Final Judgment, (Dkt. 30), is **GRANTED IN PART and DENIED IN PART**.

2. Plaintiff Campbell is entitled to recover $4,026.86 in actual and liquidated damages from Defendants.

3. Plaintiff Katsiamakis is entitled to recover $464.00 in actual and liquidated damages from Defendants.

4. The Clerk is **DIRECTED** to **ENTER JUDGMENT** as follows: Judgment is entered **FOR** Plaintiffs Campbell and Katsiamakis and **AGAINST** Defendants ADW Consulting, LLC and George Wood. For Plaintiff Campbell, judgment is entered in the amount of $4,026.86. For Plaintiff Katsiamakis, judgment is entered in the amount of $464.00."

5. Plaintiffs are entitled to recover $7,083.71 in attorney's fees and costs from Defendants.

6. Interest from the date of judgment shall accrue at the legal rate. See 28 U.S.C. § 1961.

7. The Clerk is **DIRECTED** to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 5th day of February 2025.

**Copies furnished to:**
Counsel of Record
Any pro se party

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

23